BEER, Judge.
This is a quantum case, somewhat complicated by the fact that Lester H. Thome has received injuries in two separate, unrelated accidents. The first, on June 5, 1974, has been litigated to a final conclusion. In the course of that litigation, which resulted in a judgment for Thorne in the amount of $22,-994 ($17,500 in general damages and $3,323.52 in lost wages, etc.), he alleged and subsequently produced evidence seeking to verify injuries which we summarize from the transcript of that now final trial proceeding as constant headaches, dizziness, double vision, ringing in the ears, numbness of the arms and pain in his shoulders and down his back. The back pains caused him to experience difficulty in stooping and lifting. He was unable to straighten his shoulders or straighten his back. When he was seated, he experienced pains in his lower back and, after sitting for approximately 15 minutes, it became difficult for him to arise from a sitting position. His primary reason for returning to work in January of 1975 was fear of losing his job.
The second accident, which has provoked this appeal and the answer thereto, occurred on February 9,1976. Liability is not at issue.
Thorne contends that the second accident caused injuries which we summarize from the transcript of those trial proceedings as low back pain with shooting pains in the legs, plus essentially unchanged pains in the areas described more particularly in the paragraph dealing with the results allegedly flowing from the first accident.
Upon conclusion of the case involving the second accident, the district court awarded *646 a total of $52,750.83, of which $50,561 was designated to cover “injuries, pain and suffering,” the balance covering medical expenses, etc. Here, Thorne seeks an increase and Lehleitner & Co., et al., seek, by answer to the appeal, a reduction.
Thorne relies heavily upon the testimony of Edward B. Storey, a physical therapist who acknowledges treatment of him after both accidents. Thorne sought to establish through Storey’s testimony that the second accident was the only one which resulted in the necessity for back therapy. Yet, Storey was confronted, at the trial of this case, with his own testimony from the first trial indicating therapy administered by Storey to Thorne relative to Thorne’s lumbar spinal area. Storey explains this away by blaming same on a “clerical error,” indicating that his earlier treatment was directed at upper thoracic back injury as opposed to a lumbar spine injury resulting from the second accident.
Dr. William Fisher saw Thorne after each accident but is now deceased. His records indicate that the first accident caused a concussion, neck, shoulder and back strain. The second accident caused some exacerbation of the neck and shoulder difficulties and a strain of the right thigh. Months later (some time in June of 1976) Thorne apparently complained to Dr. Fisher about his back.
Dr. Stuart Phillips acknowledged that Thorne experienced back pain before the second accident but was of the view that the second accident caused Thorne’s back pain to become persistent. Specifically, Dr. Phillips was of the view that Thorne suffered from a degenerative process which was aggravated by the second accident.
Dr. Harold M. Stokes agrees that Thorne suffered some degeneration in the lumbar spine prior to the second accident and also agrees that the second accident may have caused some aggravation of this condition, but is firmly of the view that the second accident caused nothing more than a strain which simply took longer to heal because of the degenerated situation noted above. He found no objective indication of nerve root involvement. Dr. Dorsey Dysart agrees that the degenerative process above described is playing a part in Thorne’s alleged disability, aggravated to some extent by trauma which could be attributable to the second accident.
Dr. Wayne Crutchfield, a chiropractor who saw Thome after each accident, blames the second accident for Thorne’s low back complaints.
Significant to us in our consideration of this case is the fact that no diagnostic procedures, indicative — one way or the other— of serious disc involvement, have been employed. Dr. Phillips acknowledges that a myelogram could confirm the existence of a herniated disc, observing “. . . and, of course, the test that would prove that beyond any doubt would be the myelogram . ” but goes on to say that he does not do a myelogram until “. you’re (meaning, in this case, Thome) ready to do surgery. . . . ”
Dr. Phillips also acknowledges at least one episode of lower back pain (though without radiating pain) complained of by Thorne subsequent to the first accident and prior to the second accident but qualifies that by observing that, in his view, such pain was arthritic in nature.
Accepting the fact finding on the part of the able trial judge that the second accident caused or aggravated a low back problem, this case would fall into the category that might be described as one in which the damage sought is based upon the alleged existence of a herniated lumbar disc where there is no myelographic study or subsequent corrective surgery in any way confirmatory of the claim.
This brings us to the real issue in this litigation: Has the appellant carried the burden of showing that his alleged injury supports a higher quantum award than the trial court has seen fit to render; has the appellee, in its answer to the appeal, carried the burden of showing that the trial court manifestly erred in making an award far greater than the record supports; or should the judgment be affirmed as rendered?
*647 The written reasons for judgment indicate acceptance of witness Storey’s explanation regarding the apparent conflict between his testimony in the first and second trials. Those written reasons also indicate that the trial judge believed the injuries attributable to the second accident were “serious,” and these conclusions, though not unanimous among the medical experts, are supported by the testimony of some of them.
Taking all factors into consideration, including the contentions with respect to alleged loss of income, we cannot say that the quantum of the award is manifestly in error even though we believe it to be extremely generous and considerably higher than the amount that we would have seen fit to award on the basis of this record.
Accordingly, the judgment is affirmed, all parties to this appeal to bear their own costs.

AFFIRMED.